## Case No. 8,637.

### LYNCH et al. v. CROWDER.

[12 Law Rep. 355.]

District Court. S. D. New York. 1849.

ADMIRALTY—JURISDICTION—FOREIGN SEAMEN—EQUITY—COSTS.

1. Jurisdiction of the admiralty court in suits by foreign seamen examined and explained.

[Cited in brief in Saunders v. The Victoria, Case No. 12,377. Cited in Ex parte Newman. 14 Wall. (81 U. S.) 169.]

2. Rule as to costs.

[This was a libel by Thomas Lynch and others against William Crowder, for wages.]

This was a British ship, with a British crew, shipped in England, and bound to Staten Island; and thence to a port of discharge in the United Kingdom. She brought out a cargo for Quebec, and passengers to Staten Island, where, on her arrival, the men requested to be discharged. The weight of the evidence is that the master assented to their leaving the vessel, and going to the British consul's office for their tickets of nationality and service. The master subsequently refused to consent to the discharge of the crew, or to pay them their wages, and the written dissent of the British consul to the crew's being permitted to sue in the United States courts for their wages is filed.

BETTS, District Judge. The principle which the court has repeatedly announced, and to which it is always disposed to adhere, is to decline taking cognizance of suits by foreign seamen when the voyage is not completely broken up or terminated, or the seamen have been wrongfully separated from the ship, or placed in a state of destitution here. The rule is founded upon the common interest all commercial nations have in preserving the services of their seamen to the vessel during the whole period of their engagement, and especially to secure their return home with the ship to the place of their allegiance. It would be pernicious to the interests of trade and commerce to encourage seamen in suits for wages in foreign ports, as the master or vessel, and frequently both, must in that way be interrupted in the business of the voyage, and the general adventure be subjected to embarrassing delays and losses. The occasional hardship which seamen must be subjected to by the enforcement of the rule will be more than compensated in the advance of the commercial benefits of trade and navigation, and in giving greater confidence to owners and masters in the fidelity of crews, and to the crews a stronger motive to fulfil punctually the terms of their engagements.

I do not perceive that the principle is varied at all by the consent of the master that the crew may leave his vessel. They may acquire by that a right in their home judicatories to wages for the full voyage, the same as if it had been entirely perform-

ed, but no act of wrong is done them, and others are placed in no condition of necessity to appeal to a foreign tribunal for means of subsistence. It will probably be found in general that they ask and obtain their discharge with a view to more profitable employment.

But what to my judgment is still more conclusive against the maintenance of this suit by them is that the official representative of their own country disapproves of their acts, and solicits that the court will not entertain the action, connected, moreover, with the consideration that the court would be compelled to look into all the circumstances leading to and accompanying the alleged discharge, to determine whether it was really voluntary on the part of the master, or whether it was coerced from him, or even perhaps whether there is not a guilty connivance between him and his men in granting it. Everything touching the validity of the supposed discharge belongs most properly to the courts where the litigants and this ship belong, and the law common to them all is the rightful criterion by which their rights and remedies should be adjusted.

I shall accordingly decline taking cognizance of the action, and order the libel dismissed. But as, on the proof before me, it is made to appear that the master gave his unreserved consent to the libellants, allowing them to leave the ship; and as he has furnished no proof that he recalled that consent before they had incurred costs, in endeavoring to secure them, and as such breach and violation of his original consent has imposed on them the loss of such suits, it is no more than reasonable that, in being acquitted of the men's demand, he should be compelled to make good in part this particular injury, sustained by means of his own acts. I shall, therefore, order, farther, that the respondent pay the libellants summary costs in this suit.